IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| CONSTANCE SARIESE CANTRELL,<br>    Plaintiff,<br><br>VS.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY ADMINISTRATION,<br>    Defendant. | §<br>§<br>§<br>§   CIVIL NO. 4:22-CV-229-P<br>§<br>§<br>§<br>§ |

## FINDINGS, CONCLUSIONS AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE AND NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation of the United States Magistrate are as follows:

## FINDINGS AND CONCLUSIONS

### I.    STATEMENT OF THE CASE

Plaintiff Constance Sariese Cantrell ("Cantrell") files this action pursuant to Section 205(g) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of Social Security denying her disability insurance benefits ("DIB") under Title II of the Social Security Act ("SSA"). On July 13, 2020, Cantrell proactively applied for DIB and alleged that her disability began November 25, 2019. (Transcript ("Tr.") at 180-81.) Cantrell was initially denied on January 12, 2021, and upon reconsideration on March 31, 2021. (Tr. 107-10, 113.) Cantrell then requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 124-25.) A telephone hearing was held before the ALJ on October 20, 2021, and on November 24, 2021, the ALJ found that Cantrell was not disabled within the meaning of the SSA. (Tr.169-172, 12-14.) The Appeals Council denied Cantrell's request for review on March 16, 2022. (Tr. 1-4.) Cantrell filed this civil action under 42 U.S.C. § 405(g), requesting judicial review of the ALJ's decision.

## II.  STANDARD OF REVIEW

Disability insurance is governed by Title II, 42 U.S.C. § 404 *et seq.*, and numerous regulatory provisions. *See* 20 C.F.R. Pt. 404. The SSA defines "disability" as a "medically determinable physical or mental impairment" lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. §§ 423(d)(1), 1382c(a)(3)(A).

To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. § 404.1520(a)(4). First, the claimant must not be presently working at any substantial gainful activity. *Id.* §§ 404.1520(a)(4)(i), (b). "Substantial gainful activity" is defined as work activity involving the use of significant physical or mental abilities for pay or profit. *See id.* § 404.1527. Second, the claimant must have an impairment or combination of impairments that is severe. *Id.* §§ 404.1520(a)(4)(ii), (c); *see also Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). Third, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"). 20 C.F.R. Pt. 404 Subpt. P, App. 1; 20 C.F.R. §§ 404.1520(a)(4)(iii), (d).[1] Fourth, if disability cannot be found based on the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), (f). Fifth, the impairment must prevent the claimant from doing any work, considering the claimant's RFC, age, education, and past work experiences. *Id.* §§ 404.1520(a)(4)(v), (g); *Crowley v. Apfel*, 197 F.3d 194, 197–98 (5th Cir. 1999). At steps one through four, the burden of proof rests upon the claimant to show she is

---

[1] Before moving from the third to the fourth step of the inquiry, the Commissioner assesses the claimant's residual functional capacity ("RFC") to determine the most the claimant is able to do notwithstanding her physical and mental limitations. 20 C.F.R. §§ 404.1520(a)(4), (e). The claimant's RFC is used at both the fourth and fifth steps of the five-step analysis. *Id.* § 404.1520(a)(4). At step four, the claimant's RFC is used to determine if the claimant can still do her past relevant work. *Id.* § 404.1520(a)(4)(iv). At step five, the claimant's RFC is used to determine whether the claimant can adjust to other types of work. *Id.* § 404.1520(a)(4)(v).

disabled. *Crowley*, 197 F.3d at 198. If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of her existing impairments. *Id.* If the Commissioner meets his burden, it is up to the claimant to then show that she cannot perform the alternate work. *See Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards, and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if *no* credible evidentiary choices or medical findings support the decision. *Id.* (emphasis added). An ALJ's decision is not subject to reversal, even if there is substantial evidence in the record that would have supported the opposite conclusion, so long as substantial evidence supports the conclusion that was reached by the ALJ. *Dollins v. Astrue*, No. 4:08-CV-00503-A, 2009 WL 1542466, at *5 (N.D. Tex. Jun. 2, 2009). This Court may neither reweigh the evidence in the record, nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if substantial evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383.

### III.   ISSUES

Cantrell presents the following arguments in her brief:

A. Whether the ALJ properly considered all of Cantrell's functional limitations;

B. Whether the ALJ properly considered the medical opinion evidence in determining her RFC;

    C. Whether the ALJ properly considered and rejected medical findings in determining Cantrell's ability to perform work-related activities; and

    D. Whether the ALJ established the existence of alternative work in significant number that Cantrell can perform.

(Plaintiff's Brief ("Pl.'s Br.") at 2-3.)

### IV.   ALJ DECISION

In his November 24, 2021, decision, the ALJ performed the five-step sequential evaluation process for determining whether a person is disabled. (Tr. 15-23.) The ALJ first noted that Cantrell met the disability insured status requirements under Title II of the SSA through December 31, 2024. (Tr. 17.) The ALJ then stated that Cantrell had not engaged in substantial gainful activity since November 25, 2019, the alleged disability onset date. (Tr. 17.) The ALJ further noted that Cantrell had the following "severe" impairments: "epilepsy, depressive disorder, and neurocognitive disorder." (Tr. 17.) Next, the ALJ held that none of Cantrell's impairments or combination of impairments met or equaled the severity of any impairment in the Listing. (Tr. 18.) As to Cantrell's RFC, the ALJ stated:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant can never climb ladders, ropes, or scaffolds or operate a motor vehicle in light of her seizure potential. The claimant can never work at unprotected heights or with moving mechanical parts or otherwise be exposed to unguarded hazard, i.e., there must be seizure precautions. She is able to perform simple, routine tasks, and make and perform simple work-related decisions.

(Tr. 19.) Because Cantrell is an individual of advanced age,[2] the ALJ stated a "finding regarding [her] capacity for past relevant work is not material." (Tr. 22.) The ALJ did find, however, that "considering [Cantrell's] age, education, work experience, and residual functional capacity, there

---

[2] Cantrell was born April 14, 1962, and was 57 years old on the alleged disability onset date. *See* 20 CFR 404.1563.

are jobs that exist in significant numbers in the national economy that [she] can perform." (Tr. 22.) Consequently, the ALJ found that Cantrell was not disabled. (Tr. 23.)

## V.   DISCUSSION

### A. Existence of Alternative Work

The Court will first address Cantrell's argument that the ALJ erred at Step Five. In her brief, Cantrell claims that the ALJ erred when he determined without substantial evidence that "past relevant work 'is not material'" and that there were jobs that existed in significant numbers in the national economy that Cantrell could perform. (Pl.'s Br. at 14-17.) Specifically, Cantrell maintains that the ALJ improperly credited testimony by the vocational expert ("VE") regarding job statistics that were insufficiently specific. (*Id.* at 14-16.) Cantrell argues:

> The VE acknowledged that there is no governmental agency which counts jobs by DOT codes. She agreed that jobs are now counted by the Bureau of Labor Statistics using the Occupational Employment Statistics (OES) codes, which is the same thing as the Standard Occupation Classification (SOC) code. She further testified that in responding to the ALJ's hypothetical question, she identified all of the jobs which are contained within the occupational code, as opposed to identifying job numbers pursuant to the DOT code. She testified "we don't any longer, sadly, have any way to extrapolate from those groupings of jobs how many of those numbers exist in each of those jobs." She admitted that the numbers she had provided were based upon the total number of jobs in the group.
>
> . . . .
>
> [T]he ALJ did not ask the VE to further identify the number of jobs in each of the occupational categories which would correspond with the specific jobs which the ALJ relied upon in his step 5 determination. Accordingly, there is no evidence as to job numbers which can be performed pursuant to the ALJ's hypothetical question [to the VE]. As the burden is on the Acting Commissioner to establish the existence of work, in significant numbers, which the claimant can perform, the ALJ has failed to carry his burden in this instance.

(Pl.'s Br. at 14-15; 16-17 (internal citations omitted).)

In response, the Commissioner argues:

> Plaintiff essentially takes issue with the use of data aggregation, arguing in essence that if multiple DOT codes map to a single [SOC] Code that has significant

5

> positions available, data about the SOC code can provide no useful information about how many positions each of the individual DOT codes contributed to the total. However, providing relevant information from available vocational resources is exactly why VE testimony is obtained in the administrative process.
>
> . . . .
>
> The Seventh Circuit has considered a similar argument[] regarding the specificity of publications outside of the DOT, such as the Occupational employment Quarterly II job numbers, and the court rejected this challenge. More recently, the Fourth Circuit addressed this issue, finding that requiring the [VE] to produce job statistics specific to the DOT codes means that it is unlikely that the Commissioner would ever succeed in satisfying the step five burden – which is not the result the regulations intended.
>
> . . . .
>
> The VE here relied in part upon data from the Bureau of Labor Statistics, one of the sources the Commissioner takes administrative notice of as a source [of] vocational information. Moreover, the VE specifically limited her testimony to the medium, unskilled positions she listed as required by the ALJ's hypothetical question, and did not refer to any other exertional and skill level positions that may exist within each SOC code. The ALJ could properly rely on the VE's testimony as to job numbers at step five.

(Def.'s Resp. at 16; 17 (internal citations omitted).)

At Step Five, the Commissioner "must show that there is other substantial work in the national economy that the claimant can perform." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007). When the ALJ cannot rely on the Medical-Vocational Guidelines to determine disability, "the ALJ must rely upon expert vocational testimony or other similar evidence to establish that such jobs exist." *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). The ALJ may consult various sources of evidence, including VEs and the DOT, to determine alternative and available work that the claimant can perform. *Veal v. Soc. Sec. Admin.*, 618 F. Supp. 2d 600, 608 (E.D. Tex. 2009). SSR 00-4p requires the ALJ to identify any apparent conflicts that exist between the VE's testimony and the DOT by asking the VE whether such an inconsistency exists. See SSR 00-4p,

2000 WL 1898704, at *2 (S.S.A. Dec. 4, 2000); *Graves v. Colvin*, 837 F.3d 589, 592 (5th Cir. 2016) (citations omitted).

At the hearing on October 20, 2021, the ALJ proposed the following hypothetical to the VE, which included all of the limitations he found in his RFC determination:

> [ALJ]: I would like you to assume a hypothetical claimant who does not have any past relevant work and does not have a high school diploma. And the residual functional capacity for this hypothetical claimant will be as follows with non-exertional limits only. Postural limitations would be as follows. This hypothetical claimant can never climb ladders, ropes, or scaffolds or operate a motor vehicle in light of the seizures potential.
>
> Environmentally, this claimant can never work at unprotected heights or with moving, mechanical parts or otherwise be exposed to unguarded hazards, that is there must be seizure precautions. And mental limitations would be in three areas. Let me state these affirmatively, is able to perform simple, routine tasks and to make – and to perform simple, work-related decisions. Would there be any jobs that such a claimant could perform?
>
> . . . .
>
> -- Over 55 years of age.
>
> [VE]: No problem at all, Your Honor. Day worker, DOT code 301.687-014, unskilled work with an SVP of 2 and medium strength level. And there are approximately 73,540 of those jobs existing in the national economy.
>
> Kitchen helper, DOT code 318.687-010, SVP: 2, medium strength level . . . 427, 840 of those jobs estimated to exist nationally. And a third job would be a hospital cleaner, that DOT code is 323.687-101, SVP: 2, medium strength level, approximately 104,756 of those jobs existing in the national economy.
>
> [ALJ]: Your testimony, is it consistent with the Dictionary of Occupational Titles and Selected Characteristics of Occupations?
>
> [VE]: It is, Your Honor, with the exception of the job numbers, which do not exist in those publications. But I have used the Bureau of Labor Statistics information and other government publications to come to my estimated job numbers.

(Tr. 46-47.) Cantrell's counsel cross examined the VE on this hypothetical:

> [Mr. Honig]: Okay. Isn't it true that there's no governmental agency that counts jobs by DOT codes anymore?

> [VE]: That's correct.
>
> [Mr. Honig]: Okay. And isn't it true that jobs are now counted by the Bureau of Labor Statistics using the Occupational Employment Statistics codes, which is the same thing as the Standardized Vocational Classification Code? Is that correct?
>
> [VE]: That is my understanding. Yes.
>
> [Mr. Honig]: Okay. I see that the total employment for kitchen helper as of May of 2020, which is the last number I have, is 395,660 for the entire group. And you have 427, 840 for the one job, kitchen helper. So I see a discrepancy there.
>
> [VE]: Well, yes. And what I failed to mention, Mr. Honig, is . . . I also use the SkillTRAN compilation estimates, too, in my estimates.
>
> . . . .
>
> [VE]: And perhaps I had not updated within the last probably year or so. But I don't take exception to your number. And so, even if we go with 395,000 and how many jobs are in that group right now, you're looking at –
>
> [Mr. Honig]: Right, but that would be –
>
> [VE]: --because – and it doesn't matter, but –
>
> [Mr. Honig]: – the entire group.
>
> [VE]: The other issue, of course, is we don't any longer, sadly, have any way to extrapolate from those groupings of jobs how many of those numbers exist in each of those jobs. So, I think we can agree that job numbers now are kind of sometimes in a gray area, if you will. Go ahead.
>
> [Mr. Honig]: Okay, understood. So, are you telling me that your testimony was based upon the group? Is that correct? The numbers you –
>
> [VE]: I believe, yes.

(Tr. 48-50.)

The SOC is "[m]uch like the Census Code system, it is 'used by Federal statistical agencies to classify workers into occupational categories for the purpose of collecting, calculating, or disseminating data.'" *Vandermark v. Colvin*, No. 3:13-cv-1467, 2015 WL 1097391, at *12 (N.D.N.Y. March 11, 2015) (citing Bureau of Labor Statistics, "Standard Occupational

Classification," available at http:// www.bls.gov/soc/ (last visited on Feb. 22, 2023)). It is apparent, and, here, not contested by the Commissioner, that there is no individual numerical data for specific DOT codes within the SOC. As such, the number of jobs reported by the SOC does not provide the specific number of jobs for any specific DOT code. *See Boston v. Colvin*, No. 4:14–CV–206–D, 2016 WL 721563, at *11 (E.D.N.C. Feb. 2, 2016). At the hearing, the VE acknowledged this grouping during cross-examination. (Tr. 49-50.) "Further, the DOT occupations included within a given Census code do not necessarily have the same skill and exertional requirements." *Id.* (citing *Vandermark*, 2015 WL 1097391 at *12 ("SOC codes encompass a broad grouping of jobs, and do not contain the same detailed occupational information (position descriptions) as DOT codes. Hence, one cannot infer that every job within a given SOC code has the same skill and exertional requirements, nor can one determine the incidence of available jobs for a single occupation within that code.")).

While the Fifth Circuit has not addressed this issue, other courts have upheld as substantial evidence an ALJ's reliance on a VE's proposed job numbers derived from SOC data when the VE "further adjusts the number of jobs in the broader [] category to a number that reflects the number of jobs for the cited DOT occupation and provides a reasonable basis for having done so." *Boston*, 2016 WL 721563 at *11; *see also Vandermark*, 2015 WL 1097391, at *16 (citing multiple cases that illustrate that, "despite the lack of specificity of the [] incidence data, it is possible for a VE to make a reasonable adjustment to reflect DOT-specific job numbers by calling on other available sources as well as professional experience."); *Daniels v. Colvin*, No. CV 13–654 MRW, 2014 WL 794498, at *4 (C.D. Cal. 26 Feb. 2014) ("The analytical structure that the Social Security Administration ["SSA"] employs to extrapolate that information—[VEs] actively interpreting job data obtained from reputable government or private industry sources—can certainly satisfy the undemanding 'substantial evidence' standard applied in Social Security cases."). However, it is

9

problematic when a VE fails to "reasonably adjust" or to "make any adjustments at all in the number of jobs reported [] for a Census code to reflect the number of jobs for a specific DOT job included within that Census code." *Boston*, 2016 WL 721563 at *12. It is even more problematic when the other DOT jobs included in the Census code are not jobs that the particular plaintiff may perform with his assigned RFC. *Id.*

As set forth above, at issue is whether the ALJ relied on substantial evidence presented by the VE when determining there was a significant number of jobs in the national economy that Cantrell could perform pursuant to her assigned RFC. (Pl.'s Br. at 15.) Upon receiving the hypothetical, the VE testified that Cantrell could perform work as a day worker, a kitchen helper, and a hospital cleaner. (Tr. 47.) All three jobs maintain an SVP of 2, medium strength level, and are within Cantrell's assigned RFC. The ALJ did not inquire of the VE how she obtained these numbers, rather, he merely asked the VE if her testimony was "consistent with the [DOT] and selected characteristics of occupations." (Tr. 47.) The VE stated her testimony was consistent with the DOT and selected characteristics of occupations "[b]ut that [she has] used the Bureau of Labor Statistics information and other government publications to come to [her] estimated job numbers." (Tr. 47.) The ALJ posed no further questions to the VE. On cross-examination, when asked about the number of jobs available in the national economy, the VE revealed she "also use the SkillTran complication estimates" in formulating the numbers. (Tr. 49.)

The VE's testimony did not provide the ALJ with substantial evidence on the number of jobs available for Cantrell in the national economy. While the three jobs provided by the VE—day worker, kitchen helper, hospital cleaner—are within Cantrell's assigned RFC, the VE did not testify that she made any reasonable adjustment to reflect DOT-specific job numbers by calling on other available sources or professional experience. *See Daniels*, 2014 WL 794498, at *2 ("The expert did not expressly indicate that she relied on any professional knowledge or experience to

evaluate this information. Rather, it appears that she took the 'aggregate number with a certain number of occupations.'"). And, while the VE states that she compiled numbers, the record does not support a finding that she actively interpreted job data in a manner that validates the ALJ's requisite "substantial evidence" standard. Instead, the VE testified that "job numbers now are kind of sometimes in a gray area," and that she had not reviewed certain estimates "within the last probably year or so." (Tr. 49, 50.) Moreover, the ALJ also failed to elicit any testimony from the VE that could plausibly establish the relationship between Cantrell's ability to perform a DOT listed job and the number of those positions in Texas or throughout the United States.

Based on the foregoing, and after careful review of the record, the Court **FINDS** the VE's testimony did not provide the ALJ with substantial evidence and that the ALJ failed to carry its burden of proof to establish the existence of alternative work, in significant numbers, which Cantrell can perform. *See Daniels*, 2014 WL 794498, at *4 ("The Court concludes that no 'reasonable mind might accept as adequate' the minimal showing on offer here.")

## RECOMMENDATION

For the foregoing reasons, the Court **RECOMMENDS** that the ALJ's decision be **VACATED** and that the case be **REMANDED** to the agency for further proceedings.[3]

## NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a de

---

[3] As the Court is recommending remand, it will not address Cantrell's three remaining issues. If the District Judge does not agree and accept the recommendation of remand, the undersigned will address the remaining three issues.

novo determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendations to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **March 14, 2023,** to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED February 28, 2023.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE